549 So.2d 542 (1989)
STATE
v.
Anthony Theodore BODERECK and James Bickerstaff.
1 Div. 744.
Court of Criminal Appeals of Alabama.
February 24, 1989.
Rehearing Denied August 25, 1989.
*543 Don Siegelman, Atty. Gen., and Beth Jackson Hughes, Asst. Atty. Gen., for appellant.
Barry Hess, Mobile, for appellees.
McMILLAN, Judge.
In February 1987, the appellees, Anthony Theodore Bodereck and James Bickerstaff were indicted by the Mobile County grand jury for trafficking in cocaine, in violation of § 20-2-80(2), Code of Alabama (1975), and for altering a firearm, in violation of § 13A-11-64, Code of Alabama (1975). In May 1987, both appellees filed motions to suppress, alleging that all evidence seized was the result of an unlawful search and seizure and was therefore inadmissible as evidence against them. Prior to a hearing on their respective motions, the appellees agreed to the consolidation of their cases. The appellees further agreed to waive their rights to a jury trial and entered written pleas of guilty with the understanding that the pleas would become inoperative in the event that the motions to suppress were granted. In April 1988, the trial court granted the motions to suppress. The State then filed a timely notice of appeal, certifying that the appeal was not taken for purposes of delay and that, if not reversed on appeal, the trial court's order would be fatal to the prosecution of this case. The appellees subsequently moved to have this appeal dismissed.

I.
In opposition to this appeal, the appellees argue that the ruling of the trial court on the motion to suppress was not a pretrial order, and is therefore not the proper subject of an appeal under Temporary Rule 17, Alabama Rules of Criminal Procedure. We do not agree.
Temporary Rule 17(a), Alabama Rules of Criminal Procedure, states in pertinent part:
"An appeal may be taken by the state in a felony case to the court of criminal appeals from a pre-trial order of the circuit court (1) suppressing a confession or admission or other evidence.... Such an appeal may be taken only if the district attorney certifies to the court of criminal appeals that the appeal is not brought for the purpose of delay and that the order, if not reversed on appeal, will be fatal to the prosecution of the charge."
It is apparent from the record of this case that this cause has never been set for trial, and that the court's ruling was necessarily of a pretrial nature. Although appellees argue to the contrary, citing State v. Hubbard, 526 So.2d 672 (Ala.Cr.App. 1988), the facts in Hubbard are readily distinguishable from those in the case sub judice. In Hubbard, the prosecution appealed a suppression motion which was granted only after the defendant had been tried in a bench trial, but before the trial court had rendered a judgment. We dismissed the appeal, holding that the defendant had already been tried, that jeopardy had attached, and that the appeal, taken pursuant to Temporary Rule 17, Alabama Rules of Criminal Procedure, was therefore untimely. In the present case, suppression hearings had been held, but no trial had occurred.
Although the appellees contend that jeopardy had attached in the present case, such an argument finds no support in the record. During the second suppression hearing, counsel for the appellees stated the following:
"MR. HESS: ....
"A written plea of guilty has been filed with the Court to be held in the event the Court should rule against the Defendants on the motion to suppress *544 with the understanding that the plea would never become operative in the event of a favorable motion." (Emphasis supplied.)
Because the appellees received a favorable ruling on the motion to suppress, their guilty pleas never became operative.
To support a finding of jeopardy under these facts, this Court would be required to consider the guilty pleas operative, even though the conditions necessary to their existence never occurred. Such a finding, however, would be contrary to the relevant case law.
In a recent case involving somewhat similar facts, Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987), the Supreme Court held that the defendant's breach of a plea bargain agreement removed the double jeopardy bar to reprosecution on the original charges, even where defendant had been sentenced and was already serving that sentence. The Ricketts Court noted that the plea bargain agreement provided for reinstitution of the original charge against him in the event of defendant's breach, and such an understanding under the circumstances was "precisely equivalent to an agreement waiving a double jeopardy defense." Id., 483 U.S. at 10, 107 S.Ct. at 2685-86.
In both Ricketts and the case sub judice, the guilty pleas were predicated on conditions that did not occur. Although the failed condition in Ricketts occurred as a result of defendant's breach of a plea bargain agreement, as opposed to resulting from a favorable ruling of the trial court, we can find no authority that suggests such differences are significant. For the foregoing reasons, this Court holds that the present case is properly before this Court.

II.
The appellant, the State of Alabama, argues that the search of the appellees' car was permissible under the stop and frisk exception, the probable-cause-plus-exigent-circumstances exception, or the search-incident to-a-lawful-arrest exception to the warrant requirement. The appellant therefore contends that the trial court erred in granting the motion to suppress evidence obtained as a result of the search.
Testimony during the suppression hearings shows that on the evening of January 28, 1987, Officer Christopher Berra was on routine patrol. He was familiar with the area and knew that it had a reputation for extensive drug activity.
At about 10:30 p.m., while driving through this area, Officer Berra observed a black male leaning into the passenger side of a parked Cadillac bearing out-of-state license plates and containing two white males. Berra testified that, as he drove past the Cadillac, the black male appeared to duck behind the car. This aroused Berra's suspicions, and he decided to turn around and investigate the situation. Another police car, driven by Officer John Jackson, was travelling behind Berra's car, and followed Berra to the location of the parked Cadillac.
By the time Berra reached the Cadillac, the black male had disappeared. Berra parked his police car beside the Cadillac and turned on his blue lights. He then exited his vehicle and told the driver of the Cadillac to "stay right where [he] was at." The driver replied, "Yes, sir," then sped off without his headlights on. Officers Berra and Jackson then gave chase, stopping the vehicle several blocks from where it was originally parked. As Officer Berra approached the Cadillac, he saw a black holster and a fully loaded magazine lying in plain view on its floorboard. At this time, Officer Berra secured the driver of the Cadillac in his police car while Officer Jackson put the other appellee in his vehicle.
The officers returned to the Cadillac and looked inside, finding a partially smoked hand-rolled cigarette in the ashtray. They then opened the glove compartment, which was unlocked, finding a loaded .45 caliber automatic pistol with serial numbers removed. Officer Jackson went back to the police cars and read the appellees their Miranda rights. After being given his rights, appellee Bodereck, the driver of the car, was asked if the pistol belonged to *545 him. Bodereck responded by stating, "I don't know anything about those guns in my car."
When Bodereck responded in the plural, the officers decided to conduct a further search of the appellees' car, believing that it contained another gun. Officer Jackson found an unlocked suitcase on the back seat of the car, opened it, and found a large block of what was believed to be cocaine. The appellees were then taken to the Mobile Police Department.
The Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), first addressed warrantless stops based on less than probable cause. In Terry, a police officer, after observing three men repeatedly look into a store as if they were "casing" it for a stickup, approached the men and asked them to identify themselves. When the men mumbled a reply, the officer patted them down and found weapons on two of them. In permitting the initial stop, the Court reasoned that "[p]olice do not need probable cause to stop a person for questioning, but any forcible `stop' must be supported by reasonable suspicion of criminal activity based on articulable facts." Project: Criminal Procedure, 74 Geo.L.J. 499, 534-35 (1986). In justifying the search, the Court further reasoned that "[i]f an investigating officer reasonably believes that a suspect may be armed and dangerous, the officer may conduct a carefully limited protective search of the suspect's outer clothing." Id. at 536. In Michigan v. Long, 463 U.S. 1032, 1045-52, 103 S.Ct. 3469, 3479-82, 77 L.Ed.2d 1201 (1983), the Supreme Court extended the area that could be searched during an investigative detention to the interior of a suspect's car, reasoning that this area was within the control of the suspect who police reasonably believed was dangerous and had access to weapons.
In White v. State, 479 So.2d 1368 (Ala. Cr.App.1985), this Court addressed the criteria for determining the validity of an investigatory stop under Terry, holding:
"`To justify governmental intrusion upon the Fourth Amendment rights of a private citizen, specific and articulable facts must be present which, when taken together with rational inferences from those facts, would reasonably warrant such intrusion. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Sterling v. State, 421 So.2d 1375 (Ala.Cr. App. 1982). In situations such as the case at bar, we must ask "... [W]ould the facts available to the officer at the moment of the seizure ... `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry v. Ohio, supra. Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973).'" (Emphasis supplied.)
Id. at 1375. See also Traylor v. State, 439 So.2d 178, 181 (Ala.Cr.App.1983). "Although Terry v. Ohio, supra, was factually concerned with the stops of pedestrians, the concept of the investigatory stop has been extended to stops of vehicles by subsequent decisions of the United States Supreme Court and the courts of this state." Smith v. State, 472 So.2d 677, 682 (Ala.Cr. App.1984).
In United States v. Post, 607 F.2d 847 (9th Cir.1979), the court discussed the "reasonable suspicion" prong of Terry, supra, stating:
"[T]he quantum of cause necessary to justify an investigatory stop is a `reasonable' or `founded' suspicion that the person has committed or is about to commit a criminal act ... The founded suspicion must arise from specific facts and not inchoate hunches, but the officer is entitled to draw inferences from those facts in light of his experience."

Id. at 850.
Standards of "reasonable suspicion" under Terry, supra, were further clarified by the Supreme Court in United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), in which the Court held:
"Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like `articulable reasons' and `founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the *546 essence of all that has been written is that the totality of the circumstances the whole picturemust be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."
Id. 449 U.S. at 417, 101 S.Ct. at 695.
This Court in Martin v. State, 529 So.2d 1032 (Ala.Cr.App.1988), held:
"Initially, it must be noted that a vehicle may be stopped on less than probable cause:
"....
"`The factors which can contribute to a reasonable suspicion to stop a vehicle are analogous to the factors justifying a stop and frisk of a suspect on the street. Among those factors are: the behavior of the suspect, such as erratic or evasive driving patterns; the appearance of the vehicle or its occupants; the time and location of the stop, such as a deserted area known as a narcotics pick-up point; and the experience of the police officer. While rarely will any one factor alone be sufficient to warrant a reasonable suspicion of criminal activity, most commonly several factors will appear in combination, thereby justifying a police officer in making an investigative stop.' W. Ringel, 1 Searches and Seizures, Arrests and Confessions 11-30, 31 (2d ed. 1987) (footnotes omitted)."
Id. at 1033.
In the present case, the Terry stop occurred when the police car driven by Officer Berra parked parallel to the appellees' car with its blue lights flashing, and Officer Berra instructed the driver of the car "to stay right where he was at." Whatever specific and articulable facts caused Officer Berra to detain the appellees must have existed at that time. White, supra. The record indicates, however, that at the time of the stop, the car was legally parked and that its occupants were doing nothing which might reasonably appear illegal. In fact, Officer Berra testified on cross-examination during the suppression hearing that he did not even see who the occupants were. Berra further admitted that, even considering the fact that a black man was leaning into the car when he first saw it, there was really nothing unusual about the scene and that it was possible that the occupants were merely lost and asking for directions.
In the opinion of this Court, the appellant has failed to show such facts as are necessary to satisfy the "reasonable suspicion" requirement for a valid investigatory stop under Terry, supra. Because the contraband and the illegal handgun were obtained as a direct result of this illegal stop, they were properly suppressed by the trial court.
For the foregoing reasons, the decision of the trial court is correct and is due to be affirmed.
AFFIRMED.
TAYLOR, P.J., and TYSON, J., concur.
PATTERSON, J., dissents with opinion.
BOWEN, J., joins in dissent.
PATTERSON, Judge (dissenting).
I respectfully dissent, and would reverse this case. In my opinion, it was error for the trial court to suppress the evidence seized in the search of the automobile. The officer's actions, in approaching and stopping the vehicle, were fully justified under the rule established in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This was a classic TerryStop situation. The subsequent search of the automobile and the seizure of the guns and cocaine were reasonable, and did not violate the Fourth Amendment.
I agree with the majority opinion as to the other issue on appeal. The case is properly before this court.
BOWEN, J., concurs.