Billy Wayne Gaskin was indicted for the unlawful possession of a controlled substance, in violation of § 13A-12-212(a)(1), Code of Alabama 1975. He was found "guilty as charged in the indictment." The trial judge sentenced him to 15 years in the State penitentiary.
Gaskin contends that his investigatory stop and subsequent search were illegal and that the evidence seized from the search should have been suppressed. The trial court denied the motion to suppress, after a full hearing on the matter.
At the suppression hearing the State called one witness, Officer R.M. Park. Officer Park testified that, on November 25, 1988, he was patrolling Elyton Village, an area near Legion Field in Birmingham, Alabama. Park observed a pickup truck with one occupant, parked in the alley off Second Street. Park also noticed a person standing near the driver's side of this vehicle. Park was unable to determine if the two persons were engaged in a conversation. Park did not see the two persons exchange anything.
As the officer approached the scene, the person who was standing near the truck walked away from the truck and walked toward a nearby house. The appellant, Gaskin, the driver of the truck, drove off.
Officer Park followed the truck and pulled the driver over. After Park stopped the appellant, he conducted a "pat down" search of him. When Park searched the appellant's sock, he touched an object which felt like a hypodermic needle. Park then removed a syringe from the appellant's sock and discovered a clear liquid substance inside the syringe.
Gaskin was then placed under arrest. A further search of the appellant produced another syringe, marijuana, and some pills.
Officer Park stated that he knew that this area was notorious for drug transactions. He also testified that when he observed the pickup truck, he formed the opinion that a drug transaction was taking place.
During cross-examination of Park, the following occurred:
 "Q. Did you ever go question the man that went back to the porch of the house?
"A. No, sir.
"Q. Didn't put him under arrest?
"A. No, sir.
 "Q. You had no reason to put him under arrest at that time, did you?
"A. No, sir.
 "Q. What you observed him just standing there didn't give you any cause to arrest him or think that that man had committed any felony, did it?
"A. No, sir. *Page 677 
 "Q. But you followed the truck and stopped it and you didn't have any more evidence on the driver in the truck than you had on the man that went back in that house, did you?
"A. No, sir.
 "Q. In any event, you stopped the truck and began to search it, is that correct? Or search him?
"A. Yes, sir.
 "Q. And had no evidence that any crime had been committed, a felony in particular, did you?
"A. No evidence, no, sir."
(R. 19-20)
The United States Supreme Court in Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held that a police officer may make a brief investigatory detention based upon a "reasonable suspicion" of criminal activity. This court inState v. Bodereck, 549 So.2d 542, 545-46 (Ala.Cr.App. 1989), quoting from United States v. Post, 607 F.2d 847, 850 (9th Cir. 1979), discussed "reasonable suspicion" as mentioned in Terry
and stated:
 " '[T]he quantum of cause necessary to justify an investigatory stop is a "reasonable" or "founded" suspicion that the person has committed or is about to commit a criminal act. . . . The founded suspicion must arise from specific facts and not inchoate hunches, but the officer is entitled to draw inferences from those facts in light of his experience.'
". . . .
 "Standards of 'reasonable suspicion' under Terry, [392 U.S. 1, 88 S.Ct. 1868], were further clarified by the Supreme Court in United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621
(1981), in which the Court held:
 " 'Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like "articulable reasons" and "founded suspicion" are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances — the whole picture — must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.' "
This court has also written:
 "In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Terry v. Ohio. . . . The appropriate question to ask is '. . . [W]ould the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'. Terry v. Ohio, . . . Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973)."
Sterling v. State, 421 So.2d 1375, 1379 (Ala.Cr.App. 1982).
The trial court, in denying the appellant's motion to suppress, stated that Officer Park had articulated facts which justified the stopping of this appellant. These facts included: (1) The officer observed the appellant's vehicle in an area notorious for drug transactions and (2) the activity which the officer saw between the appellant and the person on foot. Based on this the trial court said the officer had "reasonable suspicion" to believe a drug transaction had occurred or was about to occur.
The trial court relied heavily on the fact that this activity took place in an area notorious for drug transactions. The trial court said that if the same activity had taken place in a different area of the city, he may have ruled differently.
While the fact that someone was in a high crime neighborhood is not by itself enough to raise a "reasonable suspicion," an area's disposition toward criminal activity is an articulable fact to be considered. United States v. Moore, 817 F.2d 1105
(4th Cir. 1987) cert. denied, 484 U.S. 965, 108 S.Ct. 456,98 L.Ed.2d 396 (1987). *Page 678 
In Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357
(1979), two police officers, while patrolling at noon, observed Brown and another man walking away from another in an alley. This area was known to have a high incidence of drug activity. The United States Supreme Court reversed Brown's conviction and stated: "The fact appellant was in a neighborhood frequented by drug users standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct." Brown v.Texas, 443 U.S. at 52, 99 S.Ct. at 2641.
There is substantial case law to support a police officer's "reasonable suspicion" where the appellant is in a high drug area and the appellant's conduct contributed to the police officer's suspicion. See United States v. Espinosa,827 F.2d 604 (9th Cir. 1987) cert. denied, 485 U.S. 968, 108 S.Ct. 1243,99 L.Ed.2d 441 (1988); United States v. Trullo, 809 F.2d 108
(1st Cir. 1987) cert. denied, 482 U.S. 916, 107 S.Ct. 3191,96 L.Ed.2d 679 (1987).
State v. Bodereck, 549 So.2d 542 (Ala.Cr.App. 1989), is similar to the case at bar. The facts in State v. Bodereck, supra, indicate that the police officer was on patrol at 10:30 p.m., in an area which was known for drug activity. The officer observed a black male leaning into a parked Cadillac with two white male occupants. When the officer drove past the automobile, the black male ducked behind the car. This raised the officer's suspicion, so he turned around to investigate. When the officer returned, the black male was gone. The officer parked his car next to the Cadillac, turned his blue lights on and ordered the occupants to stay where they were. The driver then sped off, but was subsequently stopped by the police officers. Under these facts this court stated: "the appellant has failed to show such facts as are necessary to satisfy the 'reasonable suspicion' requirement for a valid investigatory stop under Terry, supra." State v. Bodereck, 549 So.2d at 546.
We must examine the activity which the police officer observed, to determine whether he had "reasonable suspicion" to believe a drug transaction was about to occur or had already occurred. Officer Park saw the appellant seated on the driver's side of the vehicle and another person standing next to the vehicle. When the officer approached, the appellant drove off and the other person walked to a nearby house.
The officer testified that he was not certain whether the two persons were engaged in a conversation. He testified that he never saw any exchange take place between the appellant and the man standing next to the vehicle. The testimony at the suppression hearing was that as the officer approached, the appellant drove off at a normal speed, and the person on foot walked off to a nearby house. There is no evidence that the appellant sped off from the scene or attempted to elude the police. The person on foot turned away and walked toward a nearby house. This person did not run from the scene or attempt to conceal himself from the police.
Based on the totality of the circumstances, we find that the police officer failed to articulate specific facts that would justify a Terry stop of this appellant. Thus, because the two syringes and the other illegal substances were obtained as a direct result of this illegal stop, they should have been excluded from the evidence.
For the reasons stated, the trial court should have granted the appellant's motion to suppress. The judgment is therefore due to be, and it is hereby, reversed and the cause is remanded.
REVERSED AND REMANDED.
All the Judges concur. *Page 679