797 So.2d 413 (2000)
Ex parte Charles Delwyn JAMES.
(Re Charles Delwyn James v. State).
1980820.
Supreme Court of Alabama.
June 23, 2000.
Dissenting Opinion on Overruling of Rehearing September 8, 2000.
William E. Scully, Jr., Daphne, for petitioner.
Bill Pryor, atty. gen., and Cecil G. Brendle, Jr., asst. atty. gen., for respondent.
*414 JOHNSTONE, Justice.

I. Statement of the Case

Charles Delwyn James was charged with unlawful possession of marijuana in the first degree in violation § 13A-12-213, Ala.Code 1975. James moved to suppress the marijuana on the ground that the marijuana was seized during an illegal Terry stop and patdown search. After conducting a hearing, the trial court denied the motion to suppress, and James entered a guilty plea to the charged offense, but reserved the right to appeal the denial of his motion. The trial court sentenced him to five years' imprisonment, but split the sentence and ordered him to serve 60 days in jail and the remainder of his sentence on probation. James appealed, and the Court of Criminal Appeals, on October 2, 1998, affirmed James's conviction and sentence in an unpublished memorandum. James v. State, 744 So.2d 954 (Ala.Crim. App.1998) (table). James petitioned this Court for a writ of certiorari. We granted certiorari to review the evidence presented at the suppression hearing and to determine whether the investigatory stop and patdown search of James violated his constitutional guarantee against illegal search and seizure.

II. The Facts

The only witness who testified at the suppression hearing was Officer Larry Gill, who conducted the investigatory stop and the patdown search of James. Officer Gill testified that, on February 17, 1995, about 6:00 p.m. or 6:30 p.m. he was patrolling Dauphin Island Parkway, a known high drug crime area, when he noticed a van pulled off on the shoulder of the road on Cedar Downs Drive located off Dauphin Island Parkway. Officer Gill observed "two or three subjects talking into the window of the van," but he could not see what the driver or the subjects were doing.
As Officer Gill approached the van, the "subjects" standing beside the van ran, and James, the driver of the van, drove away. Officer Gill followed the van and signaled his patrol lights for James to stop. After James pulled over at a Chevron gasoline station, he exited his van and met Officer Gill as he approached the van. Officer Gill told James he stopped him because Gill saw his van parked on the street "where those subjects ran from [his] van." Gill asked James whether he had any weapons in his possession, and James responded that he did not. Nevertheless, Officer Gill informed James that he needed to conduct a patdown search of James for safety reasons. Officer Gill testified that, as he was conducting the patdown, James "went to put his hands in his left front pants pocket and I kind of tapped his hand and told him to pull his hand out and I put my hand in [James's] pocket after his hand coming out [and] I found the marijuana cigarettes in his pocket." Officer Gill testified that he did not patdown the outside of James's pants pocket before he reached into it and that he did not feel anything that appeared to be a weapon during his patdown of James.

III. General Discussion of the Law

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized that "[t]his inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." Terry, 392 U.S. at 8-9, 88 S.Ct. 1868. The Court held that a police officer may conduct a brief investigatory stop of a person if the officer has a reasonable suspicion supported by "specific and articuable *415 facts" that the individual is, or is about to be, involved in criminal activity. The officer may also conduct a patdown search of the outer clothing of the person if the officer "is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." Terry, 392 U.S. at 24, 88 S.Ct. 1868. The search, however, must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry, 392 U.S. at 26, 88 S.Ct. 1868. To justify the investigatory stop and patdown search, the officer's actions must not be in response "to his inchoate and unparticularized suspicion or `hunch,' but [must be in response] to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id. at 27, 88 S.Ct. 1868. (Emphasis added.)
In Gaskin v. State, 565 So.2d 675 (Ala. Crim.App.1990), a case factually similar to the case before us, the Court of Criminal Appeals applied Terry and held that an officer's investigatory stop and search of Gaskin was illegal. While patrolling a high drug crime area, Officer Park observed Gaskin sitting in his truck parked in an alley off a main street and a person standing near the driver's side of the truck. Officer Park did not know whether the parties were talking, and he did not see the parties exchange anything. As Officer Park approached the parked truck, the person standing near the truck walked away and Gaskin drove away. Officer Park followed Gaskin, stopped him, and conducted a patdown search of him. During the patdown search, Officer Park felt a hypodermic needle in Gaskin's sock and removed the needle, which contained a clear liquid substance in the syringe. Officer Park arrested Gaskin, searched him further, and discovered another syringe, marijuana, and pills in his possession. The trial court denied Gaskin's motion to suppress the evidence. The Court of Criminal Appeals held that, because Officer Park failed to articulate specific facts to justify his Terry stop of Gaskin, the controlled substances seized during the illegal stop and search should have been suppressed.
In reaching its decision, the Gaskin court found the United States Supreme Court's holding in Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), compelling. In that case, Brown was arrested for illegal possession of drugs after he was stopped and searched by two police officers who had observed him and another man walk away from a man in an alley in a high drug crime area. Reversing Brown's conviction, the United States Supreme Court stated that "[t]he fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct." Brown, 443 U.S. at 52, 99 S.Ct. 2637.
More recently, the Court of Criminal Appeals followed the rationale of the United States Supreme Court regarding Terry stops in Childs v. State, 671 So.2d 781 (Ala.Crim.App.1995), where Officer Horn, who was patrolling a high crime drug area, observed a black man leaning into the passenger side window of Childs's car, which was stopped in the roadway. Officer Horn pulled his patrol car parallel to Childs's car to see what the parties were doing, and Childs drove a few feet. Officer Horn signaled his patrol car lights and stopped Childs. Officer Horn approached Childs, who remained in his car, asked Childs for his driver's license, and asked him what he was doing. Childs responded he was just talking to a friend. Officer Horn told Childs that he thought Childs may have been involved in a drug sale because he was stopped in a high drug crime area. Officer Horn then asked *416 Childs whether Horn could search the car, but Childs refused. Another officer brought a trained drug-sniffing dog, which found and indicated the scent of drugs on the passenger side of the car. Horn then obtained Childs's consent to search the car and found marijuana in a film canister on the front passenger's seat.
Childs moved to suppress the marijuana on the ground that the investigatory stop and search violated his Fourth Amendment rights. The trial court denied the motion. On appeal, the Court of Criminal Appeals held that the trial court should have granted the motion to suppress because the investigatory stop of Childs was illegal and the evidence seized during the search was inadmissible "fruit of the poisonous tree." Childs, 671 So.2d at 782. The court stated that the officer's "only basis for stopping [Childs] was that [he] was in an area known for drug activity and that someone was leaning into the window of [Childs's] car." Id. Therefore, the court concluded that there were insufficient facts to create a "reasonable suspicion" that Childs was involved in criminal activity. Id.; see also State v. Bodereck, 549 So.2d 542 (Ala.Crim.App.1989) (holding that an officer's observation of a Cadillac parked in a high drug crime area and a black male leaning into the car did not create a reasonable suspicion to justify the Terry stop and search of the occupants of the Cadillac).
We recognize the fairly recent case of Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). There the United States Supreme Court states the facts as follows:
"On September 9, 1995, Officers Nolan and Harvey were working as uniformed officers in the special operations section of the Chicago Police Department. The officers were driving the last car of a four car caravan converging on an area known for heavy narcotics trafficking in order to investigate drug transactions. The officers were traveling together because they expected to find a crowd of people in the area, including lookouts and customers.
"As the caravan passed 4035 West Van Buren, Officer Nolan observed respondent Wardlow standing next to the building holding an opaque bag. Respondent looked in the direction of the officers and fled. Nolan and Harvey turned their car southbound, watched him as he ran through the gangway and an alley, and eventually cornered him on the street. Nolan then exited his car and stopped respondent. He immediately conducted a protective pat-down search for weapons because in his experience it was common for there to be weapons in the near vicinity of narcotics transactions. During the frisk, Officer Nolan squeezed the bag respondent was carrying and felt a heavy, hard object similar to the shape of a gun. The officer then opened the bag and discovered a .38-caliber handgun with five live rounds of ammunition. The officers arrested Wardlow."
528 U.S. at 121-22, 120 S.Ct. at 674-75. The issue was whether Officer Nolan was justified in conducting a Terry stop and frisk of Wardlow. Holding that the officer was justified, the Supreme Court reasoned:
"An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant *417 further investigation. Accordingly, we have previously noted the fact that the stop occurred in a `high crime area' among the relevant contextual considerations in a Terry analysis. Adams v. Williams, 407 U.S. 143, 144 and 147-48, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
"In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. United States v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Florida v. Rodriguez, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (per curiam); United States v. Sokolow, [490 U.S. 1], at 8-9 [109 S.Ct. 1581, 104 L.Ed.2d 1(1989)]. Headlong flightwherever it occursis the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such .... We conclude Officer Nolan was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further.
"Such a holding is entirely consistent with our decision in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), where we held that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. Id., at 498, 103 S.Ct. 1319. And any `refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.' Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not `going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning."
Wardlow, 528 U.S. at 124, 120 S.Ct. at 676 (emphasis added).

IV. The Unconstitutionality of the Stop

The facts of the case before us are not analogous to the facts of Wardlow. James did not go on "headlong flight." He simply proceeded on his way in his van. The record contains no evidence that he drove hastily, erratically, or nervously. Moreover, James's driving away cannot be deemed "unprovoked" or "unusual." The people to whom he had been talking were gone. The more unusual conduct would have been to continue sitting in a parked van. Had Officer Gill chosen to pursue the "subjects" who ran, the Wardlow rule might be applicable. It is not, however, applicable to James's case.
Just as in Gaskin and Childs, the officer in the case now before us did not articulate any specific facts that would create a reasonable suspicion that James was involved in criminal activity. The officer testified that he could not determine what James or the "subjects" were doing. He did not testify that he saw the parties exchange anything. Thus, the officer's stop of James was not legally justified, and the evidence seized during the search of James should have been suppressed.

V. The Unconstitutionality of the Search

Even if Officer Gill had a reasonable suspicion to conduct an investigatory stop, his search for and seizure of the marijuana cigarettes from James's pants pocket exceeded the legal scope of Terry. *418 Terry permits a police officer to conduct a patdown search of a suspect's outer clothing to "discover guns, knives, clubs or other hidden instruments [which may be used] for the assault of the police officer." 392 U.S. at 29, 88 S.Ct. 1868 (emphasis added). The police officer may intrude beneath the outer surface of the suspect's clothing only if the police officer feels an object he reasonably suspects may be a weapon. Terry, 392 U.S. at 30, 88 S.Ct. 1868.[1]
In Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the United States Supreme Court found that Patrolman Martin violated Sibron's Fourth Amendment right against unreasonable search and seizure when Martin, without first patting down Sibron's outer clothing for weapons, "thrust his hand into Sibron's pocket and took from him envelopes of heroin." 392 U.S. at 65, 88 S.Ct. 1889. In that case, Patrolman Martin observed, over an eight-hour period, Sibron talk with a number of known narcotic addicts. Although Martin did not hear the conversations between Sibron and the addicts and did not see anything passed between them, he approached Sibron and said to him: "You know what I am after." Sibron then "mumbled something and reached into his pocket." At that point, Patrolman Martin thrust his hand into the same pocket of Sibron and removed some envelopes containing heroin. 392 U.S. at 45, 88 S.Ct. 1889. In holding the seizure of the heroin was illegal, the United States Supreme Court stated that "[t]he search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception the protection of the officer by disarming a potentially dangerous man." Sibron, 392 U.S. at 65, 88 S.Ct. 1889. The Court noted that there was no evidence that Patrolman Martin feared for his safety when Sibron reached into his pocket. 392 U.S. at 64, 88 S.Ct. 1889.
The rationale of the Sibron court was followed by the Alabama Court of Criminal Appeals in Ford v. State, 680 So.2d 948 (Ala.Crim.App.1995), wherein the court held that Officer Whetstone violated Ford's protections against unreasonable search and seizure when Whetstone ordered Ford to remove the contents of his bulging shirt pocket. The court stated:
"Whetstone did not pat-down the outer portion of [Ford's] right shirt pocket to determine if a weapon was present and he did not inadvertently discover the narcotics in the pocket as a result of the `plain feel' doctrine. See Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). When Whetstone told [Ford] to `take it out,' referring to the contents of his shirt pocket, he went beyond a general protective exploratory search allowed by Terry and was blatantly conducting an illegal warrantless search. `Although Terry permits a warrantless search based on less than probable cause, the extent of the *419 search must be carefully circumscribed. Because the purpose of such a search is to enable the officer to take steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him, ... the officer may only patdown the suspect's outer clothing in an effort to discover weapons.' United States v. Maestas, 941 F.2d 273, 276 (5th 1991), cert. denied, 502 U.S. 1046, 112 S.Ct. 909, 116 L.Ed.2d 809 (1992)."
Ford, 680 So.2d at 951. See also White v. State, 49 Ala.App. 5, 267 So.2d 802 (1972) (holding that a police officer's search for and seizure of a marijuana cigarette from the defendant's shirt pocket exceeded the scope of Terry because the police officer continued to search the defendant after his initial search did not reveal any weapons).
In the case before us, Officer Gill did not patdown the outer surface of James's pants pocket to determine if a weapon was present and did not "inadvertently discover" the marijuana cigarettes under the "plain-feel" doctrine. When Officer Gill saw James attempt to reach his hand into his pants pocket, Gill moved James's hand, reached into the pants pocket, and removed the marijuana cigarettes. Officer Gill admitted that he did not patdown the pocket before he reached inside the pocket. Also, there was no evidence that Gill feared for his safety when he saw James attempt to put his hand in his pocket. Therefore, Officer Gill violated James's right against unreasonable search and seizure when he reached into James's pocket without any legally recognized justification gained from first patting down the outer surface of the pocket to determine whether a weapon was present.

VI. Relief

Having found that the Court of Criminal Appeals and the trial court erred, we reverse the judgment of the Court of Criminal Appeals and remand the cause to that court with instructions to remand to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COOK and ENGLAND, JJ., concur.
HOUSTON, J., concurs in the judgment and in the opinion except as to Part IV ("The Unconstitutionality of the Stop"), as to which he dissents.
LYONS, J., concurs in the judgment and concurs as to Parts I, II, III, V, and VI to the extent they deal with the search, but dissents as to Part IV.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
BROWN, J., recuses herself.[*]
HOUSTON, Justice (concurring in the judgment and in the opinion except as to Part IV, and dissenting as to Part IV).
In my opinion, § 5 of the Constitution of Alabama of 1901, does not confer procedural protections of one's liberty interest beyond those required by Amendment IV of the Constitution of the United States. Certainly, the language is not the same: "[t]he right of the people to be secure in their persons ..., against unreasonable searches and seizures, shall not be violated...." Amendment IV, U.S. Constitution; "the people shall be secure in their persons ... from unreasonable seizure or searches ...." Section 5, Ala. Constitution. However, when the language is analyzed, *420 it is evident that both provisions confer the same procedural protections for an individual's liberty interestsecurity in his or her person against "unreasonable searches and seizures" (U.S. Const.); security in his or her person against "unreasonable seizure and searches" (Ala. Const.). Therefore, although the State of Alabama clearly has the power and freedom to extend greater liberty safeguards to those individuals within its boundaries than the Fourth Amendment to the United States Constitution extends to those individuals, Alabama has not done this by its organic law, and I will not do this by judicial ukase.
In my opinion, the stop was constitutional; therefore, I dissent from Part IV. "The Unconstitutionality of the Stop." Otherwise, I concur.

On Application for Rehearing
JOHNSTONE, Justice.
APPLICATION OVERRULED.
HOUSTON, COOK, LYONS, and ENGLAND, JJ., concur.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
BROWN, J., recuses herself.[**]
HOOPER, Chief Justice (dissenting).
I do not understand how the majority can read the record in this case, consider the facts set out there, and then hold that the search of James was unconstitutional. To make such a holding, one must be blind to the circumstances surrounding the officer's decision to search James. See my dissent in Ex Parte Warren, 783 So.2d 86, 97 (Ala.2000). Therefore, I respectfully dissent.
NOTES
[1] The United States Supreme Court has held also that a police officer may intrude beyond the outer clothing of a suspect if, during the patdown, the officer "feels an object whose contour or mass" gives him "probable cause to believe that the [object] is contraband." Minnesota v. Dickerson, 508 U.S. 366, 375-76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). See Allen v. State, 689 So.2d 212 (Ala.Crim.App. 1995) (recognizing the "plain-feel" doctrine of Dickerson). In the case before us, Officer Gill did not testify that he felt the object in James's pants pocket and that the "contour and mass" of the object caused him to believe James possessed illegal drugs. In fact, Officer Gill did not patdown the outer surface of James's pants pocket before he reached inside the pocket. Thus, the "plain-feel" doctrine does not save Gill's patdown search for and illegal seizure of the marijuana cigarettes from James's pants pocket.
[*] Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.
[**] Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.