OPINION OF THE COURT
Caesar D. Cirigliano, J.
Defendant, who has been indicted for criminal possession of a controlled substance in the first degree, criminal possession of a weapon in the third degree and related crimes, has moved to suppress the drugs and weapon which were recovered from the vehicle in which he was a passenger upon the grounds that the stop and search were illegal. He has also moved to suppress a statement he made to the police after his arrest based on both the asserted illegality of the stop and a violation of his Miranda rights.
FINDINGS OF FACT
On July 5, 1996, Detective Joseph Nelon responded to West 190th Street and Davidson Avenue in the Bronx based on an anonymous report of shots having been fired. Upon arriving at this location, the detective interviewed several witnesses, two of whom reported to him that they had seen shots fired at a 1995 Isuzu Rodeo 4x4 with tinted windows, that someone in the Isuzu had been shot in the right knee, and that the Isuzu had left the scene. No one reported to the detective that anyone in the Isuzu had committed a crime. Without getting these witnesses’ names, at approximately 9:50 p.m., the detective broadcasted a report that a green Isuzu Rodeo truck with tinted windows was wanted with regards to a shooting that occurred in the area of 190th Street. He then left the scene looking for this vehicle.
Within 10 minutes, Police Officer Starr spotted a green Isuzu Rodeo truck with tinted windows stopped at a traffic light at Mosholu Parkway and Jerome Avenue which is approximately a half mile from l90th Street and Davidson Avenue. Officer *884 Starr stopped the Isuzu by pulling in front of it. He and his partner then approached it with guns drawn. As they approached, the driver, Brenda McNeal, began yelling, “He’s shot, he’s shot.” Officer Starr then observed Dwayne Jones in the front passenger seat with a gunshot wound to the leg and the defendant, Tony Hernandez, in the back seat. Officer Starr ordered all of the occupants out of the vehicle while asking co-defendant Jones if there were any weapons in the Isuzu. Jones responded, “There’s a gun in the glove box. It’s registered to Ms. McNeal.”
A .38 caliber handgun was then recovered from the glove compartment, the Isuzu was searched and several ounces of cocaine and a large bag containing a green leafy material were found in the front passenger area. All of the occupants were then taken to the 52nd Precinct and Detective Nelon read the defendant his Miranda rights. The defendant then stated to Officer Starr that the green leafy substance was oregano and that it was used to throw dogs off the scent of the crack.[1]
CONCLUSIONS OF LAW
As stated above, the defendant has moved to suppress the handgun, the drugs and the statement. The defendant argues that the stop was illegal and that all of the evidence and the statement must therefore be suppressed as the fruit of that tree. Alternatively, the defendant argues that even if the stop were legal, the officers’ approach with guns drawn was unreasonable under the circumstances thereby tainting the encounter; that the police had no basis to search the Isuzu after all the occupants and the handgun had been removed; and that the defendant had not been read his full Miranda rights.
Addressing these seriatim, the defendant has standing to challenge the stop of a vehicle in which he was no more than a passenger (People v May, 81 NY2d 725; People v Matthew, 228 AD2d 260) and the burden, in the first instance, is on the People to prove that the stop comported with constitutional limitations. (People v Baldwin, 25 NY2d 66.) Moreover, if it were illegal, any evidence obtained thereby must be suppressed. (People v Matthew, supra.)
Here, Officer Starr stopped the Isuzu based on a report that it was wanted with regards to a shooting. Clearly, this was a *885 seizure under the US Constitution Fourth Amendment. (Colorado v Bannister, 449 US 1; People v Ocasio, 85 NY2d 982.) Equally clear is that Officer Starr could rely on such information as was possessed by Detective Nelon. (People v Lypka, 36 NY2d 210.) The problem, however, is that Detective Nelon had not been informed by the witnesses that the people in the Isuzu were suspects of any crime. Rather, the information he received was only that they were the victims of (and therefore presumably witnesses to) a shooting. The defendant argues, therefore, that under Terry v Ohio (392 US 1) and People v De Bour (40 NY2d 210) the stop of the Isuzu was illegal.
The typical Terry stop involves the temporary seizure of a person who is himself suspected of being directly involved in criminal activity (4 LaFave, Search and Seizure § 9.2 [b] [3d ed 1996]), and the issues involved turn on whether the police had sufficient information to justify the intrusion, i.e., a founded suspicion that criminal activity is afoot, to detain (People v Cantor, 36 NY2d 106, 114) or information that supports a reasonable suspicion that the detainee has himself committed, is committing, or is about to commit a felony or a misdemeanor, for a forcible stop. (People v De Bour, 40 NY2d 210, 223.) “The role of the police in our society [however] is a multifaceted one[,]” involving, in addition to the investigation of crime, the maintenance of order and “the obligation * * * to render [emergency] assistance to those in distress”. (People v De Bour, supra, at 218.) As a consequence the classifications that Terry (supra) and De Bour have derived in order to characterize and analyze police-suspect encounters have only an indirect application where, as here, the defendant was stopped not as a suspect but rather as a victim and/or witness to a crime. (See, People v De Bour, supra, at 219; accord, Williamson v United States, 607 A2d 471 [DC App] [Schwelb, J., concurring], cert denied 510 US 829.) The issue therefore becomes when, and under what circumstances, may the police stop a moving vehicle when they lack a reasonable suspicion that any of the occupants was a perpetrator in a crime but do possess reasonable cause to believe that all of the occupants are victims and/or witnesses to a recent serious crime.
Not surprisingly this issue has received little attention in the reported case law because victims and witnesses have little reason to challenge in court their detention. It is only when evidence leading to that person’s arrest develops as the result of the encounter that the courts will become involved. (4 LaFave, *886 Search and Seizure § 9.2 [b]; see, People v De Bour, 40 NY2d 210, 219, n 1, supra.)
This court’s research has revealed only two cases in this jurisdiction which have addressed this issue: People v John BB. (56 NY2d 482, cert denied 459 US 1010) and People v Spencer (84 NY2d 749, cert denied 516 US 905).[2] In John BB. the police, attempting to investigate a series of burglaries discovered that day in rural upstate New York, made a determination to stop all vehicles in the geographical area in order to acquire information concerning the crimes. When the defendant’s vehicle was stopped, fruits of the burglary were spotted in open view leading to his arrest. While conceding that this stop was a seizure under the Fourth Amendment without reasonable suspicion of the defendant’s criminality, the Court of Appeals upheld it. The test, that tribunal said, was whether the police conduct was reasonable after balancing the intrusion upon the detainee’s right to be left alone against the State’s interest in solving these crimes. The John BB. Court then concluded that the stopping of all vehicles in the area of the burglaries the same day as the crimes to gather information was reasonable where there was no other viable alternative. (People v John BB., supra, at 487-488.)
To be distinguished from this is the case of People v Spencer (84 NY2d 749, supra). In Spencer the victim, who had been assaulted by her boyfriend the previous day, was being driven around her neighborhood by the police canvassing for her assailant when she pointed out the defendant as being a friend of her assailant. The police then stopped the defendant, who was in a moving car, in order to make inquiry of him concerning the whereabouts of the victim’s assailant. Drugs where then observed in open view leading to the defendant’s arrest. The Court of Appeals held the stop to be bad. The test, that tribunal reiterated, was “reasonableness” and held that a vehicle stop in order to obtain information concerning the whereabouts of a suspect is unreasonable absent exigent circumstances such as to freeze an ongoing or dangerous situation and prevent the disappearance of witnesses. Moreover, the Spencer Court *887 stated: “We need not and do not hold today that police officers may never stop a vehicle in order to request information of its occupants.” (People v Spencer, 84 NY2d, supra, at 757.)
Thus, the Court of Appeals has left open the precise issue that is before this court now, to wit: where there is a dangerous, ongoing situation, may the police reasonably stop victims and/or witnesses in moving vehicles in order to freeze the situation, render aid and/or prevent the disappearance of witnesses. While this court has neither been directed to nor found any authority in this State which has explicitly answered, or even addressed, this question, it has been answered in other jurisdictions.
First, the ALI Model Code of Pre-Arraignment Procedure (Model Code) takes the position that the power to stop may be constitutionally extended to the brief detention of potential witnesses whenever:
“(i) The officer has reasonable cause to belief that a misdemeanor or felony, involving danger of forcible injury to persons or of appropriation of or danger to property, has just been committed near the place where he finds such person, and
“(ii) the officer has reasonable cause to believe that such person has knowledge of material aid [sic] in the investigation of such crime, and
“(iii) such action is reasonably necessary to obtain or verify the identification of such person, or to obtain an account of such crime.” (ALI Model Code of Pre-Arraignment Procedure § 110.2 [1] [b] [1975]; 4 LaFave, Search and Seizure § 9.2 [b].)
Second, this court’s research has revealed several jurisdictions which, when confronted by this fact pattern, have followed the parameters set forth in the Model Code. For example, in Williamson v United States (607 A2d 471 [DC App], cert denied 510 US 829, supra) a police officer heard, but did not see, shots fired. Upon rounding the corner, he saw one vehicle speeding off and the defendants quickly entering another car that started to back away. The officer stopped the defendants’ car and made inquiry about the shooting which led to their arrest. In upholding the stop, the Williamson court ruled that this officer had a founded suspicion that a crime involving a firearm had just been committed at that location, possibly involving the wounding of someone, and while the defendants could possibly have been suspects, they were clearly at least witnesses. It then applied the Model Code and held this to be the type of emergency situation within its parameters and that *888 the stop was therefore reasonable and constitutional. (See also, Patton v United States, 633 A2d 800 [DC App]; accord, Blevins v State, 310 Ark 538, 837 SW2d 879; Keeton v State, 427 So 2d 231 [Fla]; State v Shaffer, 223 Kan 244, 574 P2d 205; Wold v State, 430 NW2d 171 [Minn]; cf., Hawkins v United States, 663 A2d 1221 [DC App] [no exigency]; State v Ryland, 241 Neb 74, 486 NW2d 210 [same].)
Comparing the Model Code to John BB. and Spencer (supra), it would appear to be at least as narrowly tailored to preserve constitutional rights as the cited precedents. For example, in John BB., the stop of the vehicle was allowed despite the fact that the police did not have reasonable cause to believe that thé defendant was a witness.[3] Spencer, on the other hand, is consistent with the Model Code’s parameters because there the detainee was not a witness and there were no exigent circumstances. This court concludes therefore that the Model Code proposes appropriate guidelines for measuring the reasonableness of a police stop of a moving vehicle to question the victim and/or witness to a recent violent crime under exigent circumstances and that they would be adopted by the Court of Appeals were the issue before them. (See also, People v De Bour, 40 NY2d 210, 219, supra [policeman’s right to request information hinges on interference with detainee, gravity of crime and circumstances of the encounter, citing Model Code].)
Applying the Model Code to the case at hand:
1. Detective Nelon, and therefore Officer Starr, had reasonable cause to believe that a felony involving danger to persons had just been committed near where the Isuzu was found: eyewitness citizens[4] in a face-to-face encounter reported to Detective Nelon seeing the Isuzu fired upon and someone wounded moments before. (People v Vehap, 234 AD2d 210, lv denied 90 NY2d 865; People v Harris, 175 AD2d 713, lv denied 79 NY2d 827; cf., People v Torres, 74 NY2d 224.) Moreover, the Isuzu, exactly matching the detailed description given, and contain *889 ing a wounded passenger, was found only 10 minutes later and a half mile away, thereby substantiating the information. (People v Harris, 175 AD2d 713, supra.) Thus, there is no doubt that the right vehicle was stopped.
2. The information given to Detective Nelon, and therefore upon which Officer Starr was entitled to rely, established at least reasonable cause to believe that the individuals in the Isuzu had been the victims and/or witnesses to a shooting during which one of them had been shot, and that therefore they would have knowledge that would be of material aid in the investigation.
3. It was necessary and therefore reasonable for Officer Starr to stop the Isuzu in order to determine if its occupants needed medical attention (State v Marcello, 157 Vt 657, 599 A2d 357; see, People v Mitchell, 39 NY2d 173) and/or to determine their identities as witnesses. (See, People v De Bour, 40 NY2d 210, 218-219, supra.) The stop was therefore constitutional.
Defendant next challenges the police conduct in approaching the Isuzu with their guns drawn inasmuch as the only information available to them was that the occupants had been the victims of a crime and not the perpetrators. The fact that the police had at least a reasonable suspicion that the occupants of the Isuzu were the victims of a shooting does not mean that they knew that the occupants were not also perpetrators. Innocent, unarmed people are not typically shot at. (See, People v Benjamin, 51 NY2d 267.) This is not to say that the police had a reasonable suspicion that the occupants of the Isuzu were perpetrators, but that they had sufficient cause for caution to approach with guns drawn. (People v Chestnut, 51 NY2d 14, cert denied 449 US 1018; People v Clark, 172 AD2d 679; compare, People v Allende, 39 NY2d 474, with People v Livigni, 88 AD2d 386, affd on opn below 58 NY2d 894.)
Assuming, arguendo, the approach of the police with their guns drawn was unreasonable, the defendant does not have standing to challenge the consequences. The only events which directly resulted from the officers’ armed approach was that co-defendant McNeal stated that codefendant Jones had been shot and codefendant Jones stated that there was a gun in the glove compartment of the Isuzu. The defendant does not have standing to challenge these statements. (People v Henley, 53 NY2d 403.)
This brings us to the issue of the search of the Isuzu. Again, the defendant lacks standing to challenge the search: *890 he was no more than a passenger in the back seat of a vehicle he did not own or control. (People v Wesley, 73 NY2d 351; People v Brown, 190 AD2d 1003, lv denied 81 NY2d 968.) Defendant responds that he had an expectation of privacy in the Isuzu because it contained a secret hiding place where he hid drugs. (See, n 1, supra.) If the drugs in this case had been found in that compartment, defendant’s argument might have merit (see, People v Whitfield, 81 NY2d 904), but since they were found in the front passenger area, defendant’s argument fails. In any event, assuming, arguendo, defendant did have standing, the search was valid. Once codefendant Jones stated to the police that there was a gun in the Isuzu, they had probable cause to search it for additional weapons and evidence. (People v Fulton, 189 AD2d 778, lv denied 81 NY2d 1014; People v Pa-one, 103 AD2d 1012.)
Lastly, defendant was fully advised of his Miranda rights prior to making the challenged statement. The defendant’s motion to suppress the gun, drugs and statement is therefore in all respects denied.

. The defendant also told Officer Starr that the Isuzu had a secret compartment were he hid drugs. The People are precluded, however, from introducing this statement as part of their direct case inasmuch as they did not serve a CPL 710.30 notice with respect thereto.

. In People v Crump (217 AD2d 902) the First Department held a vehicle stop based on a radio transmission that “shots had been fired and that a dark-colored vehicle, possibly a Cadillac, was seen speeding from a specified area,” to be bad. While that tribunal did not specifically address the issue which is before this court now, it would appear that the police in Crump lacked a reasonable suspicion that the defendant was a victim and/or witness to a crime.

. The stop in John BB. (supra) was upheld based in part on the fact that the stop was nondiscriminatpry, i.e., all vehicles were being stopped. Thus, John BB. became the seminal case in New York on roving road blocks. Be that as it may, it is also the seminal case for the proposition that the police may stop a moving vehicle on less than reasonable suspicion that its occupants have committed a crime or traffic infraction in order to gather information provided the stop, after balancing the interests involved, is reasonable.

. It is ironic that Detective Nelon was not able to get these witnesses’ names during this fast-breaking situation. Perhaps if he had detained them— but then, that is the issue before us now.