PER CURIAM.
The appellant, Ronald Slater Doucette, pleaded guilty to possession of a precursor substance with the intent to manufacture a controlled substance, a violation of § 13A-12-217, Ala.Code 1975; and possession of drug paraphernalia, a violation of § 13A-12-260, Ala.Code 1975. Doucette was sentenced to 15 years’ imprisonment for his conviction of possession of a precursor substance. That sentence was suspended, and Doucette was placed on five years’ probation. He was sentenced to 12 months in jail for his conviction of possession of drug paraphernalia. That sentence was also suspended.
Doucette specifically reserved his right to appeal from the denial of his motion to suppress evidence seized during a search of his car.
The evidence presented at the hearing on Doucette’s motion to suppress was not disputed. “This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute.” State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004). “A trial court’s ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal.” State v. Hargett, 935 So.2d 1200, 1204 (Ala.Crim.App.2005).
At the suppression hearing, Deputy Aar-ion Powell of the Jefferson County Sheriffs Department testified that on the night of November 6, 2004, he was dispatched to a neighborhood in Bessemer to investigate a complaint of criminal mischief. A witness had reported that a person or persons in a red vehicle had knocked over four mailboxes in her neighborhood, including her mailbox. Deputy Powell went to the scene and met the witness outside her house. The witness identified a house in the neighborhood where the red vehicle had stopped. However, the red vehicle was gone by the time Deputy Powell arrived in the neighborhood.
For several minutes Deputy Powell patrolled the neighborhood looking for the red vehicle. While Deputy Powell was still in the neighborhood the witness telephoned the sheriffs department again and reported that a brown Ford Taurus automobile was now at the house where she had previously seen the red vehicle stop. She also said that two white males were loading brown bags into the trunk of the Taurus.
*119 Deputy Powell further testified that as he returned to the area he passed a Taurus; the occupants were two white males. He turned around to follow the Taurus, and it was parked at a nearby gasoline service station. Deputy Powell said that he drove into the service station with the intent to identify the people in the Taurus in connection with his investigation into who had knocked over the mailboxes. He said that he drove up behind the parked Taurus and activated his lights when he saw that the driver was putting the car in reverse. He said that he wanted to ensure that the driver saw him. Deputy Powell testified twice that the driver, later identified as Doucette, voluntarily got out of the vehicle with his hands raised before Deputy Powell could get out of his patrol car. Deputy Powell did say once that he told the “driver” to exit the vehicle; however, after reading his entire testimony it appears that he was referring to the passenger. The passenger appeared to be intoxicated, Deputy Powell said, or “on some type of drugs,” and Doucette had a “little smell of alcohol to him.” (R. 10.) Deputy Powell said that he asked Doucette and the passenger to come to the rear of the vehicle, and he asked for their identification. He then patted them down to determine if they had any weapons and walked to the driver’s side to look inside the car. He observed plastic baggies and a small scale sitting on the console. Deputy Powell then arrested the driver for possession of drug paraphernalia and the passenger for public intoxication.
During the inventory search of Dou-cette’s vehicle, law-enforcement officers discovered a brown bag in the trunk. The bag apparently contained the precursor substances; however, the specific items found in the bag were not disclosed at the suppression hearing.
Doucette contends on appeal that the stop of his vehicle at the gasoline service station constituted an illegal detention in violation of the Fourth Amendment. Specifically, Doucette argues that Deputy Powell had no reasonable suspicion to believe that he had committed a crime; therefore, Deputy Powell’s decision to detain him was unlawful.
“The Fourth Amendment comes into play only if the police have made a ‘seizure.’ ‘[interrogation relating to one’s identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.’ I.N.S. v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984) (emphasis added). Not every encounter between an individual and a police officer is a seizure. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); United States v. Mantinez-Fuerte, 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116 (1976).”
Worthy v. State, 473 So.2d 634, 636 (Ala.Crim.App.1985). “[C]haracterizing every street encounter between a citizen and the police as a ‘seizure,’ while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices.” United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
In this case, Deputy Powell approached a parked automobile in the course of investigating a crime.
“ ‘ “The mere approach and questioning of ... persons [in a parked vehicle] does not constitute a seizure.” W. LaFave, 3 Search and Seizure § 9.2(h) (2d ed.1987), and cases cited therein. Thus, the officers needed no *120 probable cause to initially approach the appellant in his parked car.’
“Christmas v. State, 624 So.2d 684, 685 (Ala.Crim.App.1993).”
Johnson v. State, 784 So.2d 373, 375 (Ala.Crim.App.2000).
In Atchley v. State, 393 So.2d 1034 (Ala.Crim.App.1981), this Court addressed whether there had been a “seizure” for purposes of the Fourth Amendment when police approached an individual who was sleeping in his parked vehicle. We stated:
“The most recent pronouncement of the Court on the precise issue of whether a seizure has in fact occurred is found in United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), a plurality decision in which the Court overturned the Sixth United States Circuit Court of Appeals’ reversal of a drug possession conviction. It appeared that the defendant had alighted from a passenger airliner at the Detroit airport and was then observed by two agents of the Drug Enforcement Administration (DEA), who had noticed that defendant exhibited characteristics consistent with a DEA drug courier ‘profile.’ At some point, while defendant was walking through the airport terminal, the two agents approached her, identified themselves, and asked to see her ticket and some identification, which defendant then produced. Upon finding that the names on the ticket and identification did not match, and after defendant failed to satisfactorily explain the discrepancy, the agents asked her to accompany them to a nearby DEA office, where they then asked her if she would consent to a search of her person and effects. The defendant apparently complied, and in the ensuing search, narcotics were discovered. As a part of its ruling, the Court expressly determined that the initial approach of and questioning by the agents had not constituted a ‘seizure’ within the mandates of Terry [v. Ohio, 392 U.S. 1 (1968) ] and Sibron [v. New York, 392 U.S. 40 (1968) ], supra:
“ ‘We adhere to the view that a person is “seized” only when by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but “to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.” United States v. Martinez-Fuerte, 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 [(1976)]. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person’s liberty or privacy as would under the Constitution require some particularized and objective justification.
“ ‘Moreover, characterizing every street encounter between a citizen and the police as a “seizure,” while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. The Court has on other occasions referred to the acknowledged need for police questioning as a tool in the effective enforcement of the criminal laws.’
“446 U.S., at 553, 100 S.Ct., at 1877.”
393 So.2d at 1041-42.
Later, the Alabama Supreme Court in Ex parte Betterton, 527 So.2d 747 (Ala. *121 1988), further addressed this issue and stated:
“While it is clear that the stopping of a vehicle and the detention of its occupants constitutes a seizure within the meaning of the Fourth Amendment, Colorado v. Bannister, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980), in the present case the car was already stopped and parked in a public park. We must therefore ask whether the officer’s actions amounted to such an implied restraint or show of authority that ‘a reasonable person would have believed that he was not free to leave.’ Mendenhall, 446 U.S. [544] at 554, 100 S.Ct. [1870] at 1877 [ (1980) ].
“In his treatise on search and seizure, LaFave discusses the issue as follows:
“ ‘[W]hat does it mean, then, to say that a reasonable person “would have believed that he was not free to leave”? [United States v.] Mendenhall, [446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) ], [Florida v.] Royer, [460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ], and [Immigration & Naturalization Service v.] Delgado, [466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) ] make it perfectly clear that it takes something more than mere questioning by a police officer. Thus, if an officer merely walks up to a person standing or sitting in a public place (or, indeed, who is seated in a vehicle located in a public place) and puts a question to him, this alone does not constitute a seizure....
“ ‘[T]he mere approach and questioning of [persons seated within parked vehicles] does not constitute a seizure. The result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation. The officer may tap on the window and perhaps even open the door if the occupant is asleep. A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so. Likewise, the encounter becomes a seizure if the officer orders the suspect out of the car. So too, other police action which one would not expect if the encounter was between two private citizens — boxing the car in, approaching it on all sides by many officers, or use of flashing lights as a show of authority — will likely convert the event into a Fourth Amendment seizure.’
“W. LaFave, 3 Search & Seizure § 9.2(h) (2d ed.1987) (footnotes omitted). See cases cited at n. 230, p. 409 and nn. 263-265, p. 416.
“In Terry v. Ohio, [392 U.S. 1 (1968) ], the Supreme Court noted that not every encounter between police officers and citizens constitutes a seizure within the protection of the Fourth Amendment. Terry, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d [889] (1968). In United States v. Berry, 670 F.2d 583 (5th Cir.1982), the Court of Appealsf,] concluded that Supreme Court holdings since Terry have sculpted out three tiers of police-citizen encounters. The court stated that first tier encounters — communications between police and citizens involving no coercion or detention — are outside the compass of the Fourth Amendment. See, also, United States v. Willis, 759 F.2d 1486, 1495 (11th Cir.1985) (police-citizen encounters of a restricted investigative scope conducted in a noncoercive manner do not trigger Fourth Amendment protections).
*122 “In the present case, the officers merely approached a car parked in a public place. We agree with the Court of Criminal Appeals that such action did not amount to such a show of authority or implied restraint as to amount to a seizure of the petitioner. United States v. Pajari, 715 F.2d 1378 (8th Cir.1983). See La[F]ave, 3 Search & Seizure § 9.2(h) (2d ed.1987).”
527 So.2d at 749-50. Other state and federal courts agree. See United States v. Baker, 290 F.3d 1276 (11th Cir.2002) (no seizure when police approach vehicle stopped in traffic); United States v. Dockter, 58 F.3d 1284, 1287 (8th Cir.1995) (“[The appellants] were not seized within the meaning of the Fourth Amendment when [a police officer] pulled his vehicle behind their parked car and activated his amber warning lights.”); United States v. Kim, 25 F.3d 1426, 1430 (9th Cir.1994) (“[W]here, as here, officers come upon an already parked car, this disparity between automobile and pedestrian stops dissipates and the driver is not clearly stopped in any sense ab initio, except of his own volition.”); State v. Harris, 384 N.J.Super. 29, 45, 894 A.2d 8, 17-18 (2006) (“Brief, non-intrusive encounters with individuals on the street or in parked cars implicate none of the privacy or security concerns engendered by discretionary police spot checks of moving vehicles.”); State v. Jack, 156 Ohio App.3d 260, 263, 805 N.E.2d 187, 189 (2004) (“We begin by noting that approaching the occupants of a parked car to ask questions does not constitute a seizure.”); Carrera v. State, 261 Ga.App. 832, 834, 584 S.E.2d 2, 5 (2003) (“‘It is well established that an officer’s approach to a stopped vehicle and inquiry into the situation [are] not a “stop” or “seizure”.... ’ ”); State v. Gahner, 554 N.W.2d 818, 820 (N.D.1996) (“The law distinguishes between approaching an already stopped vehicle and stopping a moving one.”); In re the Welfare of E.D.J., 502 N.W.2d 779, 782 (Minn.1993) (“[T]he mere act of approaching a person who is standing on a public street or sitting in a car that is parked and asking questions is not a ‘seizure.’ ”); State v. Pulley, 863 S.W.2d 29, 30 (Tenn.1993) (“A police officer may approach a car parked in a public place and ask for driver identification and proof of vehicle registration, without any reasonable suspicion of illegal activity.”).
According to Ex paite Betterton, in evaluating whether a police encounter with an individual in a parked vehicle is a “seizure” we examine the particular facts of the case to determine if there was a “show of authority” by police. 527 So.2d at 749.
“ ‘Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.’ ”
State v. Foreman, 133 N.C.App. 292, 515 S.E.2d 488 (1999), quoting State v. Farmer, 333 N.C. 172, 187, 424 S.E.2d 120, 129 (1993), quoting in turn United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). “Mendenhall establishes that the test for existence of a ‘show of authority’ is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer’s words and actions would have conveyed that to a reasonable person.” California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
In this case, Doucette voluntarily got out of his vehicle with his hands raised before Deputy Powell was able to exit his *123 patrol car; there was one police officer present; Deputy Powell did not brandish his weapon; Deputy Powell’s speech was not intimidating; and Deputy Powell did not physically touch Doucette until after he had looked in the driver’s side window and discovered the drug paraphernalia, at which time he handcuffed Doucette and the passenger. There was no testimony as to whether Doucette’s vehicle was “blocked in” by the patrol car. Deputy Powell did testify that he had activated the lights on his car. However, this fact alone did not elevate the encounter to a seizure.
The New Mexico Court of Appeals in State v. Baldonado, 115 N.M. 106, 847 P.2d 751 (1992), noted the danger of adopting an absolute rule that the activation of a police officer’s patrol lights is always a seizure:
“We can conceive of many situations in which people in stopped cars approached by officers flashing their lights would be free to leave because the officers would be simply communicating with them to ascertain that they are not in trouble. Under such circumstances, depending on the facts, the officers may well activate their emergency lights for reasons of highway safety or so as not to unduly alarm the stopped motorists. We are loathe to create a situation in which officers would be discouraged from acting to help stranded motorists, from acting in the interest of the safety of the traveling public, or from acting in the interest of their own safety.”
115 N.M. at 109, 847 P.2d at 754. The Baldonado court declined to adopt a per se rale that a seizure occurs when a police officer pulls his patrol car behind a parked car with his lights activated. See also United States v. Dockter, supra; Martin v. State, 104 S.W.3d 298 (Tex.App.2003) (court adopted the rationale of the Baldo-nado court); State v. Dubois, 75 Or.App. 394, 706 P.2d 588, 590 (1985) (“[A]n officer’s use of overhead lights alone does not necessarily cause an encounter to be a stop.”).
Based on the totality-of-the-circumstances in this case, we hold that Deputy Powell’s encounter with Doucette was not a seizure within the scope of the Fourth Amendment.
Moreover, even if we were to conclude that there was a “seizure,” we recognize that there is a distinction between stopping a suspect and stopping a potential witness. Our research has revealed no. Alabama case that has specifically addressed this issue. Professor LaFave in his treatise Search and Seizures wrote:
“The typical Terry [v. Ohio, 392 U.S. 1 (1968) ] stop involves the temporary seizure of a person who is himself suspected of being directly involved in past, present or pending criminal activity. Is the power so limited, or may persons be stopped for the purpose of determining whether they can provide information implicating others in criminal activity? The nature of the issue is such that it will seldom arise in court, for it is unlikely that a person stopped because he is a potential witness will have the occasion or desire to challenge this action unless something incriminating that person occurs as a consequence of the stop.
“The Model Code of Pre-Arraignment Procedure takes the sensible position that the power to stop may constitutionally be extended so as to encompass the brief detention of potential witnesses in at least certain situations. The Code proposes that an officer be allowed to make a stop whenever
“(i) The officer has reasonable cause to believe that a misdemeanor or felony, involving danger of forcible injury to persons or of appropriation of or danger to property, has just *124 been committed near the place where he finds such person, and
“(ii) the officer has reasonable cause to believe that such person has knowledge of material aid in the investigation of such crime, and
“(in) such action is reasonably necessary to obtain or verify the identification of such person, or to obtain an account of such crime.
“This provision meets a genuine need, for it provides a lawful basis whereby ‘an officer coming upon the scene of a recently committed crime [can] “freeze” the situation and obtain identifications and an account of the circumstances from the persons present.’ ”
LaFave, Search and Seizure § 9.2(b), p. 289 (4th ed.2004).
In State v. Watkins, 207 Ariz. 562, 88 P.3d 1174 (2004), the Arizona Court of Appeals upheld the stop of a potential witness and stated:
“Other jurisdictions also allow officers to stop potential witnesses. E.g., State v. Pierce, 173 Vt. 151, 787 A.2d 1284, 1288 (2001) (‘We agree that under some circumstances the balance tips in favor of allowing law enforcement officers to briefly stop a potential witness to a crime to obtain information even though the witness is not suspected of criminal conduct.’); State v. Gopher, 193 Mont. 189, 631 P.2d 293, 296 (1981) (‘The State’s burden has two elements: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity.’); Barnhard v. State, 86 Md.App. 518, 587 A.2d 561, 566 (1991) (‘The momentary detention of a material witness to allow the police to investigate a crime is permissible, even if the police do not suspect the person of wrongdoing.’); People v. Hernandez, 177 Misc.2d 882, 679 N.Y.S.2d 790, 795 (Sup.Ct.1998) (vehicle stop to question a 'witness to a recent violent crime under exigent circumstances was constitutional). See also Kolender v. Lawson, 461 U.S. 352, 366 n. 3, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (Brennan, J., concurring) (‘Police officers may have a similar power [to detain an individual for the purpose of asking investigative questions] with respect to persons whom they reasonably believe to be material witnesses to a specific crime.’); Williamson v. United States, 607 A.2d 471, 476 (D.C.1992) (Farrell, J., concurring) (‘[The officer] was not required to sort out [the defendant’s] exact role — participant or witness — before stopping him to inquire about a just-completed crime of violence.’), cert. denied, 510 U.S. 829, 114 S.Ct. 96, 126 L.Ed.2d 63 (1993).
“Having determined that the Brown [v. Texas, 443 U.S. 47 (1979) ] balancing test favors the officers’ stop of Defendant, we caution that an officer’s ability to detain such a witness is not without limitation. As discussed above, officers may stop witnesses only in limited and exigent circumstances. Pierce, 787 A.2d at 1288. In conformity with this requirement, other courts have set forth the following guidelines for when an officer may stop a witness: (1) The officer reasonably believes a crime has just occurred near the area where he finds the person; (2) The officer reasonably believes the person has material knowledge regarding the crime; and (3) Stopping the person is reasonably necessary to obtain information about the person or crime. Id. (quoting Model Code of Pre-Arraignment Procedure § 110.2(l)(b) (1975), and discussing 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment *125 § 9.2(b), at 24-25 (3d ed.1996)); Williamson, 607 A.2d at 476; City of Kodiak v. Samaniego, 83 P.3d 1077, 1083-84 (Alaska 2004); Hernandez, 679 N.Y.S.2d at 794.”
207 Ariz. at 564-67, 88 P.3d at 1176-79.
Similarly in Beauvois v. State, 837 P.2d 1118 (Alaska Ct.App.1992), the Alaska Court of Appeals stated:
“In Metzker v. State, 797 P.2d 1219 (Alaska App.1990), this court specifically recognized the authority of the police to conduct investigative stops of potential witnesses to a recent criminal occurrence, even when there is no reason to believe that the person stopped participated in the crime.
“ ‘Under appropriate circumstances, a police officer may approach and stop a person for the purpose of investigating a crime even though the officer has no reason to believe that the person stopped has committed the crime which is being investigated. 3 W. La-Fave, Search and Seizure, § 9.2(b), at 353-57 (1987).... [Cjourts generally seem to be in agreement that the fourth amendment does not allow the police to stop potential witnesses to the same extent as suspects of a crime. It appears the police are justified in stopping witnesses only where exigent circumstances are present, such as where a crime has recently been reported. See, e.g., Baxter v. State, 274 Ark. 539, 626 S.W.2d 935, 937 (1982) (police entitled to stop car in vicinity of recently committed armed robbery to ask driver if he had seen anybody nearby).... ’
“Metzker, 797 P.2d at 1221.”
837 P.2d at 1121.
We join those jurisdictions that endorse the stop of a potential witness under limited circumstances and adopt the analysis set out by the Arizona court in Watkins. Here, Deputy Powell knew that a crime had been committed and that the Taurus had just been seen at the house where the red vehicle being driven by the perpetrators of the crime had last been seen. All of these events occurred within a short period after the eyewitness to the crime contacted police. As the court in Watkins stated, before upholding a police officer’s stop of a potential witness we examine whether “(1) [t]he officer reasonably believe[d] a crime has just occurred near the area where he finds the person; (2) [t]he officer reasonably believe[d] the person has material knowledge regarding the crime; and (3) [sjtopping the person is reasonably necessary to obtain information about the person or crime.” Watkins, 207 Ariz. at 567, 88 P.3d at 1179. The circumstances presented in this case satisfied these requirements; thus, the stop was reasonable and did not violate the Fourth Amendment protection against unreasonable search and seizures. Police officers must have the ability to investigate crimes, including interviewing potential witnesses; i.e., those who might have information concerning these crimes.
Accordingly, the circuit court did not err in denying Doucette’s motion to suppress. Doucette’s convictions and sentences are affirmed.
AFFIRMED.
BASCHAB, P.J., and McMILLAN and WISE, JJ., concur. SHAW, J., concurs in the result. WELCH, J., concurs in the result, with opinion.