42 So.3d 789 (2009)
Joshua Logan MUSE
v.
STATE of Alabama.
CR-08-0699.
Court of Criminal Appeals of Alabama.
August 28, 2009.
Rehearing Denied September 25, 2009.
Certiorari Denied January 29, 2010 Alabama Supreme Court 1081820.
*790 Whitney B. Polson, Birmingham, for appellant.
Troy King, atty. gen., and Jack W. Willis, asst. atty. gen., for appellee.
KELLUM, Judge.
Pursuant to a negotiated plea agreement, the appellant, Joshua Logan Muse, was convicted of driving under the influence of alcohol, in violation of § 32-5A-191(a)(2), Ala.Code 1975, and of illegal possession of a prescription medication, a violation of § 34-23-7, Ala.Code 1975. The circuit court sentenced Muse to 90 days' imprisonment for the DUI conviction and to one year's imprisonment for the prescription-drug-possession conviction. Both sentences were suspended, and Muse was placed on two years' supervised probation. The circuit court ordered Muse to pay all applicable mandatory fines and court costs.
Before pleading guilty, Muse reserved the following issue for appellate review: Whether the arresting officer had reasonable suspicion, first, to stop Muse and, then, to arrest Muse. Muse raised this issue in a motion to suppress before the circuit court. At a hearing on that motion, the circuit court considered the following evidence from the testimony. On July 11, 2007, Roy Dempsey, an officer with the Shelby County Sheriff's Department, was traveling south on Alabama Highway 119 at 1:10 a.m. when he observed a man, later identified as Muse, outside his vehicle on Broken Bow Drive in the Broken Bow subdivision. Muse was parked near a house in the subdivision. Officer Dempsey testified that Muse was standing behind the vehicle and that the trunk of the vehicle was open. According to Officer Dempsey, Muse did not have the vehicle flashers turned on and there were no signs that he was repairing a flat tire.
Officer Dempsey testified that he drove past Muse, then turned around and pulled in behind Muse's vehicle. At that time, Officer Dempsey was in a marked patrol vehicle and had not engaged his red and blue lights. Officer Dempsey testified that Muse then got in his vehicle without acknowledging the patrol vehicle, turned on his headlights, and drove approximately 5 to 10 feet. At that point Office Dempsey turned on his flashing lights, and Muse immediately stopped his vehicle. According to Officer Dempsey, Muse stumbled as he got out of the vehicle. After Officer Dempsey concluded that Muse had been drinking and that he was incapable of safely driving a motor vehicle, he arrested Muse for DUI.
*791 Officer Dempsey testified that he did not know if Muse's vehicle had broken down or exactly what Muse was doing when he pulled in behind Muse's vehicle. Officer Dempsey explained that when he pulled in behind Muse, he thought either that Muse's vehicle had broken down or that Muse needed some assistance. Officer Dempsey testified that he then stopped Muse "to see what was going on." Officer Dempsey testified that he did not observe any crimes and that there had been no reports of any crimes taking place at that location that night.
On cross-examination by the State, Officer Dempsey explained that there had been an ongoing problem with the unlawful breaking and entering of vehicles in the northern part of Shelby County  the part of the county where Officer Dempsey observed Muse's parked car. Officer Dempsey testified that finding a stopped vehicle in the road with no lights on was suspicious. After pulling Muse over, Officer Dempsey determined that Muse indeed had two flat tires on his vehicle. After considering the evidence presented at the suppression hearing, the circuit court denied Muse's motion to suppress.
On appeal, Muse contends that the motion to suppress should have been granted because, he argues, Officer Dempsey failed to establish reasonable suspicion to support the investigatory stop and subsequent search of Muse's vehicle.
"This Court reviews de novo a circuit court's decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999)." State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App. 2004). In the instant case, the facts are uncontested; the only issue is the circuit court's application of the law to those facts. This Court affords no presumption in favor of the circuit court's ruling.
"The United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held that `a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' 392 U.S. at 22, 88 S.Ct. at 1880. The standard for allowing a Terry stop is whether there is a reasonable suspicion that `the person being stopped has engaged in some type of criminal activity.' Webb v. State, 500 So.2d 1280, 1281 (Ala.Crim.App.), cert, denied, 500 So.2d 1282 (Ala.1986)."
Ex parte Carpenter, 592 So.2d 627, 629 (Ala.1991).
"`"The officer [making a Terry stop]... must be able to articulate something more than an `inchoate and unparticularized suspicion or "hunch."' [Terry, 392 U.S.] at 27. The Fourth Amendment requires `some minimal level of objective justification' for making the stop. INS v. Delgado, 466 U.S. 210, 217 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means `a fair probability that contraband or evidence of a crime will be found,' [Illinois v. Gates, 462 U.S. 213, 238 (1983),] and the level of suspicion required for a Terry stop is obviously less demanding than for probable cause."'"
State v. White, 854 So.2d 636, 640 (Ala. Crim.App.2003), quoting Alabama v. White, 496 U.S. 325, 329-30, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), quoting in turn United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).
"In reviewing reasonable suspicion determinations, courts must look at the *792 `"totality of the circumstances"' to see whether the detaining officer had a `"particularized and objective basis"' for suspecting wrongdoing. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). `This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."' Arvizu, 534 U.S. at 273, 122 S.Ct. 744 (quoting Cortez, 449 U.S. at 418, 101 S.Ct. 690)."
State v. Odom, 872 So.2d 887, 890 (Ala. Crim.App.2003).
In United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), the United States Supreme Court explained:
"Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like `articulable reasons' and `founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances the whole picturemust be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. See, e.g., Brown v. Texas, [443 U.S. 47, 51 (1979) ]; United States v. Brignoni-Ponce, [422 U.S. 873, 884 (1975)]."
449 U.S. at 417-18, 101 S.Ct. 690 (emphasis added).
In the instant case, Officer Dempsey observed Muse's vehicle stopped on the side of a road in the front of a house in a subdivision at 1:10 a.m. Officer Dempsey, who was driving a marked police vehicle at the time, passed Muse's vehicle, turned around, and then pulled in behind Muse's vehicle. He believed either that Muse's vehicle had broken down or, more generally, that Muse needed some assistance. At the time Officer Dempsey pulled in behind Muse's vehicle, he believed that he was acting to help a stranded motorist. See, e.g., Doucette v. State, 10 So.3d 117 (Ala. Crim.App.2008), cert, denied, 10 So.3d 126 (Ala.2008) (recognizing that the mere approach and questioning of a person seated in a parked vehicle do not constitute a seizure within the meaning of the Fourth Amendment).
However, after Officer Dempsey pulled in behind Muse's vehicle, Muse, who was standing behind his vehicle with the trunk open, got into his vehicle and drove away without acknowledging Officer Dempsey. Officer Dempsey subsequently turned on his flashing lights to initiate a traffic stop. At the time Officer Dempsey pursued Muse, he knew that there had been ongoing problems with the unlawful breaking and entering of vehicles in the area. Muse's decision to drive away after Officer Dempsey pulled over to assist him  Officer Dempsey believed he was a stranded motorist  raised a reasonable suspicion that Muse was engaged in criminal conduct.
Given the totality of the circumstances, Officer Dempsey was able to articulate a sufficiently particularized basis for a suspicion to justify investigating Muse. United States v. Cortez, supra. Based on the foregoing, the circuit court's judgment is affirmed.
AFFIRMED.
WISE, P.J., and WINDOM and MAIN, JJ., concur.
WELCH, J., dissents, with opinion.
*793 WELCH, Judge, dissenting.
Joshua Logan Muse appealed his conviction for driving under the influence of alcohol, a violation of § 32-5A-191(a)(2), Ala. Code 1975, and for illegal possession of a prescription medication, a violation of § 34-23-7, Ala.Code 1975. Muse reserved the issue of the trial court's denial of his motion to suppress the evidence for appeal. This Court affirms the decision of the trial court finding that the arresting officer had reasonable suspicion, first, to stop Muse, and then to arrest Muse. I must respectfully dissent.
The majority holds in its opinion, "Muse's decision to drive away after Officer Dempsey pulled over to assist him  someone Officer Dempsey believed to be stranded  raised a reasonable suspicion that Muse was engaged in criminal conduct." Essentially, the majority maintains that when a citizen is approached by a law-enforcement officer who has no reasonable suspicion that criminal activity is afoot, the mere fact that the citizen ignores the officer's presence and leaves generates a reasonable suspicion that criminal activity has taken place.
The majority's citation of Doucette v. State, 10 So.3d 117 (Ala.Crim.App.2008), is unhelpful. Doucette concerned an approach by a law-enforcement officer to question a witness. It did not concern the seizure of a motorist under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The majority's decision is at odds with controlling precedent and fails to distinguish what makes the principle adduced in Doucette relevant to this case.
In the instant case, the facts show that Officer Dempsey pulled behind Muse's vehicle, apparently with the intention to assist a stranded motorist, not having any suspicion that criminal activity was taking place, then Muse drove off. Officer Dempsey initiated a traffic stop and seizure with his blue lights on only after Muse had driven 5 to 10 feet. In Childs v. State, 671 So.2d 781 (Ala.Crim.App.1995), this Court addressed a similar factual scenario. In Childs, the officer was in an area of high drug activity and witnessed a man leaning into the passenger's side window of Childs's car. The officer pulled to the side of the car to see what the men were doing, and Childs drove away. The officer initiated a traffic stop with his blue lights on after Childs had driven only 10-15 feet. See Childs, 671 So.2d at 781. Even though the incident in Childs took place in a high-crime area, where the officer himself had previously made drug arrests, this Court held the seizure invalid based on the similar cases of Gaskin v. State, 565 So.2d 675 (Ala.Crim.App.1990), and State v. Bodereck, 549 So.2d 542 (Ala.Crim.App.1989).
"In Bodereck, police were patrolling an area known for a high amount of drug activity and observed a black man leaning into the passenger's side window of a parked Cadillac automobile bearing an out-of-state license plate. As the police drove by, the black man ducked behind the Cadillac. Based on these facts, the police decided to investigate. This court held that these facts were not sufficient `to satisfy the "reasonable suspicion" requirement for a valid investigatory stop under Terry [v. Ohio, 392 U.S. 1 (1968)].' Bodereck, 549 So.2d at 546.
"In Gaskin, police observed a pickup truck parked in an alley. One occupant was in the truck. A person was standing near the driver's side of the truck, but the officer could not tell if that person and the person in the truck were talking. He did not see them exchange anything. The area was `notorious for drug transactions.' Again, this court held that a vehicle parked in a high crime area with persons both inside and outside the vehicle engaged in conversation *794 does not justify a Terry stop under the totality of the circumstances. Gaskin, 565 So.2d at 676-78."
Childs v. State, 671 So.2d at 782-3.
In Ex parte James, 797 So.2d 413 (Ala. 2000), an officer witnessed a van on the side of the road and two or three people talking to the driver of the van. The officer could not see what either the people standing outside the van or the driver of the van were doing. As the officer approached the van, the people outside the van ran away, and the van drove off. The officer followed the van and turned on his blue lights, initiating a traffic stop. The Alabama Supreme Court held the seizure invalid because there were no specific articulable facts that James was engaged in criminal activity and because the officer was not justified in stopping and seizing James's van under the "headlong flight" rule established in Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), finding that the evidence did not show the defendant drove away hastily, erratically, or nervously.
The holding of Ex parte James applies to the instant case. Officer Dempsey specifically testified that he did not witness Muse commit a traffic violation when he drove off. (R. 10.) In addition, Officer Dempsey did not state any specific articulable facts that would tend to indicate that Muse was involved in criminal activity before Officer Dempsey activated his lights and initiated the traffic stop. This Court has routinely held that the time of night, the area where the stop occurred, and recent crime in the area cannot justify a warrantless seizure. See New v. State, 674 So.2d 1377 (Ala.Crim.App.1995) (stop at 3:30 a.m. in area of recent burglaries was unjustified); Duckworth v. State, 612 So.2d 1284 (Ala.Crim.App.1992) (stop made between 1:00 a.m. and 3:00 a.m. in an area of recent burglaries was unjustified); Harris v. State, 568 So.2d 421 (Ala.Crim.App.1990)(traffic stop made in the early morning hours in an area of reported burglaries was unjustified); W.D.H. v. State, 16 So.3d 121 (Ala.Crim. App.2008) (seizure made in an area of complaints of drug activity and shooting was unjustified).
Here, Officer Dempsey had no reasonable suspicion that Muse was engaging in any criminal activity before he activated his lights and forced Muse to stop his vehicle. Further, Muse did not engage in "headlong flight" in an attempt to evade Officer Dempsey; rather, Muse merely pulled away from where his car had been parked. As stated above, the fact that Muse was standing outside his car at approximately 1:00 a.m. in an area that had experienced criminal activity does not rise to the level of reasonable suspicion so as to warrant a seizure. Officer Dempsey was not responding to a report of a crime, and he did not notice that Muse's car was disabled prior to requiring Muse to stop. It is irrelevant that Officer Dempsey was "just a little suspicious." (R. 10.) "`A police officer may not rely on good faith, inarticulable hunches, or generalized suspicions to meet the Terry standard of reasonable suspicion.' Project IV: Georgetown Law Journal; Vol. 79, p. 616 (April 1991)." Duckworth v. State, 612 So.2d at 1286.
I believe that the trial court erred in denying Muse's motion to suppress because Officer Dempsey had not testified that he had observed any specific articulable facts indicating that Muse was involved in criminal activity. Therefore, for the reasons stated above, I must dissent from the majority's opinion affirming Muse's conviction.