*793 WELCH, Judge,
dissenting.
Joshua Logan Muse appealed his conviction for driving under the influence of alcohol, a violation of § 32-5A-191(a)(2), Ala. Code 1975, and for illegal possession of a prescription medication, a violation of § 34-23-7, Ala.Code 1975. Muse reserved the issue of the trial court’s denial of his motion to suppress the evidence for appeal. This Court affirms the decision of the trial court finding that the arresting officer had reasonable suspicion, first, to stop Muse, and then to arrest Muse. I must respectfully dissent.
The majority holds in its opinion, “Muse’s decision to drive away after Officer Dempsey pulled over to assist him— Officer Dempsey believed he was a stranded motorist — raised a reasonable suspicion that Muse was engaged in criminal conduct.” Essentially, the majority maintains that when a citizen is approached by a law-enforcement officer who has no reasonable suspicion that criminal activity is afoot, the mere fact that the citizen ignores the officer’s presence and leaves generates a reasonable suspicion that criminal activity has taken place.
The majority’s citation of Doucette v. State, 10 So.3d 117 (Ala.Crim.App.2008), is unhelpful. Doucette concerned an approach by a law-enforcement officer to question a witness. It did not concern the seizure of a motorist under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The majority’s decision is at odds with controlling precedent and fails to distinguish what makes the principle adduced in Doucette relevant to this case.
In the instant case, the facts show that Officer Dempsey pulled behind Muse’s vehicle, apparently with the intention to assist a stranded motorist, not having any suspicion that criminal activity was taking place, then Muse drove off. Officer Dempsey initiated a traffic stop and seizure with his blue lights on only after Muse had driven 5 to 10 feet. In Childs v. State, 671 So.2d 781 (Ala.Crim.App.1995), this Court addressed a similar factual scenario. In Childs, the officer was in an area of high drug activity and witnessed a man leaning into the passenger’s side window of Childs’s car. The officer pulled to the side of the car to see what the men were doing, and Childs drove away. The officer initiated a traffic stop with his blue lights on after Childs had driven only 10-15 feet. See Childs, 671 So.2d at 781. Even though the incident in Childs took place in a high-crime area, where the officer himself had previously made drug arrests, this Court held the seizure invalid based on the similar cases of Gaskin v. State, 565 So.2d 675 (Ala.Crim.App.1990), and State v. Bodereck, 549 So.2d 542 (Ala.Crim.App.1989).
“In Bodereck, police were patrolling an area known for a high amount of drug activity and observed a black man leaning into the passenger’s side window of a parked Cadillac automobile bearing an out-of-state license plate. As the police drove by, the black man ducked behind the Cadillac. Based on these facts, the police decided to investigate. This court held that these facts were not sufficient ‘to satisfy the “reasonable suspicion” requirement for a valid investigatory stop under Terry [v. Ohio, 392 U.S. 1 (1968)].’ Bodereck, 549 So.2d at 546.
“In Gaskin, police observed a pickup truck parked in an alley. One occupant was in the truck. A person was standing near the driver’s side of the truck, but the officer could not tell if that person and the person in the truck were talking. He did not see them exchange anything. The area was ‘notorious for drug transactions.’ Again, this court held that a vehicle parked in a high crime area with persons both inside and outside the vehicle engaged in conversa *794 tion does not justify a Terry stop under the totality of the circumstances. Gaskin, 565 So.2d at 676-78.”
Childs v. State, 671 So.2d at 782-83.
In Ex parte James, 797 So.2d 413 (Ala.2000), an officer witnessed a van on the side of the road and two or three people talking to the driver of the van. The officer could not see what either the people standing outside the van or the driver of the van were doing. As the officer approached the van, the people outside the van ran away, and the van drove off. The officer followed the van and turned on his blue lights, initiating a traffic stop. The Alabama Supreme Court held the seizure invalid because there were no specific ar-ticulable facts that James was engaged in criminal activity and because the officer was not justified in stopping and seizing James’s van under the “headlong flight” rule established in Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), finding that the evidence did not show the defendant drove away hastily, erratically, or nervously.
The holding of Ex parte James applies to the instant case. Officer Dempsey specifically testified that he did not witness Muse commit a traffic violation when he drove off. (R. 10.) In addition, Officer Dempsey did not state any specific articu-lable facts that would tend to indicate that Muse was involved in criminal activity before Officer Dempsey activated his lights and initiated the traffic stop. This Court has routinely held that the time of night, the area where the stop occurred, and recent crime in the area cannot justify a warrantless seizure. See New v. State, 674 So.2d 1377 (Ala.Crim.App.1995) (stop at 3:30 a.m. in area of recent burglaries was unjustified); Duckworth v. State, 612 So.2d 1284 (Ala.Crim.App.1992) (stop made between 1:00 a.m. and 3:00 a.m. in an area of recent burglaries was unjustified); Harris v. State, 568 So.2d 421 (Ala.Crim.App.1990)(traffic stop made in the early morning hours in an area of reported burglaries was unjustified); W.D.H. v. State, 16 So.3d 121 (Ala.Crim.App.2008) (seizure made in an area of complaints of drug activity and shooting was unjustified).
Here, Officer Dempsey had no reasonable suspicion that Muse was engaging in any criminal activity before he activated his lights and forced Muse to stop his vehicle. Further, Muse did not engage in “headlong flight” in an attempt to evade Officer Dempsey; rather, Muse merely pulled away from where his car had been parked. As stated above, the fact that Muse was standing outside his car at approximately 1:00 a.m. in an area that had experienced criminal activity does not rise to the level of reasonable suspicion so as to warrant a seizure. Officer Dempsey was not responding to a report of a crime, and he did not notice that Muse’s car was disabled prior to requiring Muse to stop. It is irrelevant that Officer Dempsey was “just a little suspicious.” (R. 10.) “ ‘A police officer may not rely on good faith, inarticulable hunches, or generalized suspicions to meet the Terry standard of reasonable suspicion.’ Project TV: Georgetown Law Journal; Vol. 79, p. 616 (April 1991).” Duckworth v. State, 612 So.2d at 1286.
I believe that the trial court erred in denying Muse’s motion to suppress because Officer Dempsey had not testified that he had observed any specific articula-ble facts indicating that Muse was involved in criminal activity. Therefore, for the reasons stated above, I must dissent from the majority’s opinion affirming Muse’s conviction.